Rule Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5996 | **DATE** | 8/28/2003 |
| **CASE TITLE** | PAUL G. PETERSON vs. U.S.A., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Illinois Supreme Court's motion to dismiss is granted [14-1] and the ARDC's motion to dismiss is granted in part and denied in part [15-1, 15-2]. Count VI remains as to ARDC only. Gajewski's motion to consolidate is denied with prejudice [18-1, 18-2]. Status hearing set for 10/1/03 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | SEP 0 2 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | U.S. DISTRICT COURT CLERK | docketing deputy initials | 23 |
| | Mail AO 450 form. | | | | |
| ✓ | Copy to judge/magistrate judge. | | 03 AUG 29 AM 8:30 | date mailed notice | |
| | TBK | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAUL G. PETERSON )<br>)<br>Plaintiff, )<br>)<br>UNITED STATES OF AMERICA, )<br>DEPARTMENT OF JUSTICE, FEDERAL )<br>BUREAU OF INVESTIGATION, DRUG )<br>ENFORCEMENT AGENCY, ATTORNEY )<br>REGISTRATION AND DISCIPLINARY )<br>COMMISSION, ILLINOIS SUPREME, )<br>MARY ROBINSON, ADMINISTRATOR )<br>OF THE ARDC, TRACY KEPLER AND )<br>ROSALYN KAPLAN, EMPLOYEES OF )<br>OF THE ARDC. )<br>)<br>Defendants. ) | Case No. 02 C 5996<br>Judge Ronald A. Guzman<br><br>**DOCKETED**<br>SEP 0 2 2003 |

## MEMORANDUM OPINION AND ORDER

Paul G. Peterson ("Peterson") has sued the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), the United States Justice Department, the Federal Bureau of Investigation ("FBI"), the Drug Enforcement Agency ("DEA"), the Illinois Supreme Court, and three employees of the ARDC, Mary Robinson, Tracy Kepler, and Rosalyn Kaplan alleging a variety of claims under the constitution, the American With Disabilities Act, 42 U.S.C. §2000d, the Age Discrimination Act, 29 U.S.C. § 621, and the Civil Rights Act of 1964.

Before the Court are Defendants, the Illinois Supreme Court and the ARDC's, motions ro dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Also pending is non-party Jane Gajewski's ("Gajewski") motion to consolidate her case with Peterson's, her emergency motion for appointment of counsel, or in the alternative, her motion to

---

[1] To date these are the only two defendants served in this lawsuit.

1

23

have Peterson be allowed to practice law in federal court. Gajewski is a plaintiff in a case pending before another judge in this district against an unrelated defendant.

For the reasons set forth below, the Illinois Supreme Court's motion to dismiss is granted, the Illinois ARDC's motion to dismiss is granted in part and denied in part, and Gajewski's motion to consolidate or in the alternative for Peterson to be allowed to practice law is denied with prejudice.

## FACTUAL BACKGROUND

On November 1, 2001, the ARDC filed a two-count complaint against Plaintiff, Paul Peterson ("Peterson"). On April 22 and 23, 2002, a disciplinary hearing was held on the charges against Peterson, whose license was suspended on October 17, 2001 on an interim basis pursuant to the proceedings. Three weeks after Peterson filed his complaint, on September 11, 2002, the ARDC Hearing Board filed a Report and Recommendation recommending that Peterson be suspended from the practice of law for 30 months and until further order of the court. On December 27, 2002, the Illinois Supreme Court ordered Peterson suspended from the practice of law until further order. On August 22, 2002, Peterson filed an eight-count complaint against Defendants.

Count I seeks a declaration as to the validity of the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb. Count II seeks a finding by this court that the Controlled Substances Act of 1970, 21 U.S.C. §801 is unconstitutional. Count III seeks a ruling that certain rules of the Illinois Supreme Court and the ARDC are unconstitutional, and Count IV alleges that certain employees of the Supreme Court and the ARDC violated the United States Mail Fraud Act under 18 U.S.C. § 1341. Count V requests a finding that Plaintiff's First Amendment and Due Process

rights have been violated and Count VI states alleges violations under the Americans With Disabilities Act, 42 U.S.C. § 2000d. Count VII alleges a claim under the Civil Rights Act of 1964 and Count VIII requests a finding that Plaintiff's rights under the Age Discrimination Act, 29 U.S. C. § 621 have been violated.

The primary relief sought by Peterson in his complaint is an order from this court directing the Illinois Supreme Court and the ARDC to lift his suspension. In addition, Peterson seeks an order directing the ARDC to hire Peterson, an injunction against all Defendants as to any further unethical activity, an apology, and compensatory damages in the amount of $500,000.

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. In determining whether subject matter jurisdiction exists, the court must accept all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Sapperstein v. Hager*, 188 F. 3d 852, 855 (7th Cir. 1999). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants assert that this court does not have jurisdiction over the subject matter of this action and should abstain under *Middlesex County Ethics Comm. v. Garden State Bar Association*, 457 U.S. 423 (1982), *Younger v. Harris*, 401 U.S. 37, 43 (1971), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S.

462 (1983). In addition, defendants argue to the extent Peterson seeks monetary damages or supplemental relief from defendants, his claims are barred by the Eleventh Amendment. Because both Defendants raise the same arguments we address them simultaneously.

## I. Abstention Under Younger and Middlesex

In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that there is a strong federal policy against a federal court's interference with pending state court proceedings absent extraordinary circumstances. The basic principle of the *Younger* abstention doctrine is that a federal court should not interfere with pending state judicial proceedings, allowing few exceptions. *Barichello v. McDonald*, 98 F. 3d 948, 954 (7th Cir. 1996). Abstention is appropriate unless state law clearly bars allowance of constitutional claims. *Moore v. Sims*, 442 U.S. 415, 425-26 (1979).

In *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), the Supreme Court established an analysis for determining whether or not the *Younger* doctrine required a district court to abstain from attorney disciplinary proceedings. The policies underlying *Younger* are applicable to noncriminal judicial proceedings when important state interests are involved. *Moore v. Simms*, 422 U.S. 415 (1979). The district court must abstain from interference in an attorney disciplinary proceeding if: (1) the disciplinary proceedings are ongoing state judicial proceedings; (2) the proceedings implicate an important state interest; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceedings. *Id.* In *Storment v. O'Malley*, 938 F. 2d 86, 89 (7th Cir. 1991), the court concluded that Illinois disciplinary proceedings were judicial in nature and involved an important state interest, satisfying the first two prongs of the *Middlesex* test. Thus, the only issue to be

4

addressed is whether Peterson has had an adequate opportunity to raise constitutional challenges to his disciplinary proceedings. We find that Peterson has had such opportunities.

Peterson asserts that because he has brought his constitutional claims five times to the Illinois Supreme Court, and these claims were denied without explanation he has had no opportunity to raise any challenges to his suspension. (Pl's. Resp. Mot. Dismiss, p.6). Peterson relies on his misconstrued interpretation of *Ohio Civil Rights Commission v. Dayton Christian School*, 477 U.S. 619 (1986) to support his claim that this continued denial by the Illinois Supreme Court did not afford him an opportunity to present his constitutional challenges thus triggering the exception to *Younger*. A district court is not required to abstain from a state proceedings if (1) the state proceedings are motivated by a desire to harass or is conducted in bad faith; (2) there is an immediate and extraordinary need for relief; or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions. *Pincham v. Illinois Judicial Inquiry Bd.*, 872 F.2d 1341, 1349 (7th Cir. 1989).

The fact that review by the Illinois Supreme Court is discretionary or unsuccessful does not mean that Peterson *was not afforded the opportunity* to present his constitutional challenges. Illinois law does not bar, but provides the opportunity to raise any constitutional challenges. Ill. Sup. Ct. R. 753(e)(1)-(e)(5). Peterson, however, claims otherwise alleging that all of his motions have been denied, defendants are harassing, defaming and misrepresenting his medical condition.

The exception to *Younger* "requires more than a mere allegation and more than a 'conclusory' finding." *Grandco Corp. v. Rochford*, 536 F.2d 197, 203 (7th Cir. 1976). This specific evidence must show that the state prosecution "was brought in bad faith for the purpose of retaliating or deterring the exercise of constitutionally protected rights." *Collins v. County of*

5

*Kendall*, 807 F.2d 95, 98 (7th Cir. 1986)(citing *Wilson v. Thompson*, 593 F. 2d 1375, 1383 (5th Cir. 1979)).

More specifically, Peterson alleges the following as the basis for his allegations of harassment:

> He did say 'unflattering things' about and to the Illinois Supreme Court (and the ARDC) and this is why he was handed the draconian 30 month suspension–THE HEARING PANEL MADE SPECIFIC NOTE THAT THE UNDERLYING CHARGES WERE NOT SO EGREGIOUS,' but because he stated the panel's procedure was a 'sham' and made these 'personal attacks' (because of the myriad of fraud, etc.), they levied the heavy fine in time! (*Emphasis in original*).

(Pl's Mem. Resp. ARDC's Motion to Dismiss, p.18)

Peterson further complains as follows:

> the employees of the ARDC have been totally recalcitrant in refusing to even have him tested for the absence of cannabis in his system, and they have in fact refused to set up any follow-up evaluations, reasonably necessary due to the substantial change in circumstances due to his abrupt and total cessation of usage of that controversial medication (Cannabis) on and at 9/4/01, which proves their lack of any proper motive in maintaining the Count I from that day on to the present i.e.; they were truly interested in helping hin and his clients...then they should embrace his total abstinence and seek to help him to restart his career with reasonable "Ahern" restriction, and this a success rather than a fatal failure, which justifies them dismissing him as a defective failure-this all proves their bad intent to quell political dissident Speech.

(Peterson's Complaint, page 5)

These allegations taken as true for purposes of this motion to dismiss are still insufficient to bring Peterson's case within the harassment exception set forth in *Pincham*. Plaintiff's assertions are largely conclusory. Further, Plaintiff's alleged facts do not support a conclusion that the disciplinary proceedings were brought in bad faith or for the purpose of deterring his exercise of constitutionally protected rights. The above facts simply support a conclusion that

6

Peterson disagrees with the manner in which the ARDC and the Illinois Supreme Court are conducting these proceedings i.e. ARDC refusing to set up follow up evaluations to monitor Peterson's cannabis use. Therefore, the *Middlesex and Younger* doctrine prevents this court from revisiting Peterson's claims.

## II. Abstention Under Rooker-Feldman

In the alternative, Defendants move to dismiss the complaint for lack of subject-matter jurisdiction based upon the *Rooker-Feldman* doctrine. This doctrine precludes federal courts from exercising jurisdiction over claims that would requite them to review a final judgment of a state court. *Manley v. City of Chicago*, 236 F. 3d 392, 396 (7th Cir. 2001).

The *Rooker-Feldman* doctrine applies if (1) the disbarment proceedings before the Illinois Supreme Court was judicial in nature, and (2) plaintiff's constitutional claims are "inextricably intertwined" with Illinois Supreme Court's disbarment order. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983); *Leaf v. Supreme Court of the State of Wisconsin*, 979 F. 2d 589, 599 (7th Cir. 1992). Unless the case is outside the bounds of the *Rooker-Feldman* doctrine, judicial review of state court final judgments lies exclusively within the jurisdiction of the United States Supreme Court. 28 U.S.C. §1257(a)(1982). Thus, district courts do not have jurisdiction "over challenges to state-court decision in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486.

### (1) Judicial In Nature

The Supreme Court has clearly held that state bar disciplinary proceedings are generally judicial in nature. *Feldman*, 460 U.S. at 479. The Court set forth the following test: a judicial

proceeding "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist...Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter..." *Id.* at 477. However, district courts do have subject-matter jurisdiction over challenges to state bar rules if "promulgated by state courts in non-judicial proceedings." *Id.* at 486.

Applying this test, although Peterson does challenge Illinois' bar rules, the matter is a judicial proceeding. The record indicates the judicial nature of the disciplinary proceedings. In these proceedings the ARDC and Supreme Court investigate and enforce liabilities on the facts at hand as applied to existing laws.

### (2) Inextricably Intertwined

Having determined that the proceedings against Peterson are judicial in nature, the court turns to the issue of whether Peterson's claims are "inextricably intertwined" with the Illinois Supreme Court's impending order. In determining the meaning of "inextricably intertwined" the issue is whether the "district Court is in essence being called upon to review the state-court decision." An action in federal court that alleges an injury is "inextricably intertwined" with a state court decision, such that success in the federal court would require overturning the state court decision is barred by the *Rooker-Feldman* doctrine. *Lewis v. Anderson*, 308 F. 3d 768, 772 (7th Cir. 2002).

In the present case, Peterson is challenging the constitutionality of the state bar rules as applied to him in the disciplinary proceeding. Peterson's complaint is not a general constitutional challenge to the Illinois Supreme Court's disbarment rules and procedures. Rather, the complaint alleges several constitutional violations and relates these violations extensively to

8

the facts behind Peterson's disciplinary proceedings. Such a comparison would not have been necessary to assert the invalidity of the rules in general. *Stern v. Nix,* 840 F. 2d 208, 212-213 (3rd Cir. 1988).

In addition, Peterson's claims seeks to redress injuries resulting from state court's decision. This effectively requires the lower federal court to review the state court's decisions and overturn them, which is exactly what the *Rooker-Feldman* doctrine prohibits. "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment. *Remer v. Burlington Area Sch. Dist.,* 205 F. 3d 990, 996 (7th Cir. 2000).

Although the state disciplinary proceedings are pending, even with an eventual outcome, the district courts may be barred from revisiting Peterson's claims under *Rooker-Feldman.* Peterson may seek review of the Illinois Supreme Court's decision in the United States Supreme court. Accordingly, this court lacks subject matter jurisdiction as to counts III-V.

### III. Eleventh Amendment Immunity

Moreover, the Eleventh Amendment deprives federal courts of jurisdiction to consider most suits against states. It applies to injunctive suits against the states as well as those for damages. *Penjurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Although the Eleventh Amendment does not bar suits against a State by its own citizens, the Supreme Court "has consistently held that an unconsenting state is immune from suit brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). However, a state may waive its Eleventh Amendment immunity and consent to suit in federal court, or Congress, under its Fourteenth Amendment enforcement powers, may abrogate

the state's immunity. *MSA Realty Corp. v. Illinois*, 990 F. 2d 288, 291 (7th Cir. 1993). In addition, there are limited circumstances identified by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908) in which a suit may be filed against state officials. State agencies and officials sued in their official capacities are "the state" for Eleventh Amendment purpose. *Will v. Michigan Dept. of State Police*, 491 U.S.58, 71 (1989) and *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In this case, it is undisputed that the "state" has not waived its immunity nor consented to this court's jurisdiction. In addition, Congress has not abrogated the state's immunity as to the alleged causes of action. We look to the exceptions articulated in *Ex Parte Young* one more time.

Under *Ex Parte Young*, "a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law," *Dean Foods Co. v. Brancel*, 187 F.3d 609, 614 (7th Cir. 1999). The Supreme Court held that when a state official violates the Constitution or federal law, he acts outside the scope of his authority and is no longer entitled to the State's immunity from suit. 290 U.S. at 155-56. This allows federal courts to "vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 345 (7th Cir. 2000). Consequently, state officials may be sued in their official capacities for injunctive relief, but not for monetary damages. *MSA Realty Corp.*, 990 F. 2d at 291.

In a recent case, the Supreme Court defined when the *Ex Parte Young* exception applies. "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Maryland, Inc. v. Public Service Comm. Of Maryland,* 535 U.S. 635, 645 (2002)(*citing Coeur d'Alene,* 521 U.S. 261, 296 (1997)).

The complaint is void of any facts alleging any ongoing violation of federal law by a state official. Instead, Peterson alleges a past violation that occurred on one occasion. Because Peterson alleges violations of federal laws that have occurred solely in the past, Peterson cannot satisfy the "ongoing violation" requirement imposed by *Ex Parte Young,* and the Eleventh Amendment bars this lawsuit. Moreover, by its very nature, a past violation tends to implicate retroactive, as opposed to prospective relief. In the present case, the nature of the relief Plaintiff seeks includes an apology to Plaintiff as well as compensatory damages which have been barred by the Eleventh Amendment.

Finally, qualified immunity is available to a public official when "the official's action do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Peterson has failed to set forth any facts which supports his contention that any of the individual defendants named in the Plaintiff's complaint violated clearly established statutory or constitutional rights of which a reasonable person would have know. Peterson's statement Kepler was in error to proceed with charges is simply not enough for purposes of surviving the motions to dismiss. Hence, defendants are immune under the Eleventh Amendment.

As to the remaining claims Peterson has failed to state a cause of action. Count I of the complaint seeks a declaration that the Religious Freedom Restoration Act of 1993 (RFRA) protects Peterson from criminal prosecution for his use of cannabis; and a declaration that there

11

is no compelling state interest in restricting his "essential beliefs and practices." This count appears to be directed at the federal defendants named in this lawsuit who to date still have not been served. To the extent that the requested declaration regarding a compelling state interest is directed to the ARDC or Illinois Supreme Court defendants case law provides that RFRA cannot be enforced against the State of Illinois or its officials. *See City of Boerne v. Flores,* 521 U.S. 507 (1997).

Count II of Peterson's complaint seeks a declaration that the Controlled Substances Act of 1970 is unconstitutional. Obviously, Peterson will not be able to prevail on this claim. As to Count IV we find that this count deficient in that the United States Attorney is the only authorized party to bring criminal charges for alleged violations of federal law, 28 U.S.C. § 547 and an individual has no legal right to compel a prosecution. *See Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973). Therefore, Peterson lacks the requisite standing to request the relief sought in Count IV.

Count VI seeks declaratory relief and damages under Titles I and II of the American with Disabilities Act, citing as bases for this claim, both Peterson's disciplinary prosecution and the ARDC's refusal to interview him for professional employment while disciplinary charges were pending against him. The Seventh Circuit in *Bruggeman v. Blagojevich,* 324 F. 3d 906, 912 (7th Cir. 2003) reiterated under *Ex Parte Young,* has held that state officials could be held liable in their official capacities for alleged violations of the ADA. Because of Peterson's alleged medical condition he may or may not qualify for protection under the ADA. A violation of the ADA appears highly unlikely because of his suspension from law as well as his other ethical violations. Because we are at a motion to dismiss stage, however, count VI survives defendants motion to

dismiss as to the ARDC only. We take this opportunity to remind Plaintiff of the consequences of frivolous lawsuits brought without a good faith basis.

In Count VII, Peterson complains that he is entitled to damages under Title VII for civil rights violations. Specifically, he alleges violations of his First Amendment rights on the basis of the psychiatric evaluation as described in paragraph 43 of his complaint. Title VII addresses discriminatory employment practices, and it is inapplicable to Peterson's claim, as the ARDC, acting as a prosecutor of the disciplinary matter, is not Peterson's employer nor is the Illinois Supreme Court. Even if the ARDC were to be considered an employer or prospective employer the psychiatric evaluation was performed in connection with the disciplinary proceedings not the potential hiring.

**IV. Non-Party Jane Gajewski's motion**

Non party Jane Gajewski's motion to consolidate Peterson's case with her case is denied with prejudice because her case is not related to the case before this court.[2] Gajweski improperly filed this motion before us rather than before Judge Manning, who has the lowered numbered case. Gajewski's emergency motion to allow Peterson to practice in federal court is also denied in light of his suspension from the practice of law in Illinois.

---

[2] Gajewski fails to cite the rule she is moving under for consolidation. We assume it is Fed. R. Civ. P. 42.

## CONCLUSION

For the reasons set forth above, the Illinois Supreme Court's motion to dismiss is granted [#14-1] and the ARDC's motion to dismiss is granted in part and denied in part [#15-1, 15-2]. Count VI remains as to ARDC only. Gajewski's motion to consolidate is denied with prejudice [#18-1, 18-2].

SO ORDERED.  ENTERED: 8/28/03

Ronald A. Guzman
United States Judge